BERLIN AND FARRO LIQUID INCINERATION, INC. v
DEPARTMENT OF NATURAL RESOURCES

1. ADMINISTRATIVE LAW—AIR POLLUTION ACT—ABATEMENT OF POLLU-
   TION—CONSENT AGREEMENTS—STATUTES.

   The Air Pollution Act authorizes air polluters and the Air Pollu-
   tion Control Commission to enter into consent agreements to
   abate air pollution problems (MCLA 336.11 *et seq.;* MSA
   14.58[1] *et seq.).*

2. ADMINISTRATIVE LAW—AIR POLLUTION—STATE AGENCIES—POLLU-
   TION AGREEMENTS—ADMINISTRATIVE ACTION—STATUTES.

   The Air Pollution Control Commission and the Water Resources
   Commission have express authority to institute further admin-
   istrative action where a polluter violates a pollution control
   agreement with them (MCLA 336.18[3], 323.7[1]; MSA
   14.58[8][3], 3.527[1]).

3. ADMINISTRATIVE LAW—AIR POLLUTION—STATE AGENCIES—CEASE
   AND DESIST ORDERS—PUBLIC WELFARE—STATUTES.

   The Department of Natural Resources is authorized to issue cease
   and desist orders and to suspend the waste disposal licenses of
   a polluter where it finds that the public health, safety or
   welfare requires emergency action and it incorporates this
   finding in its order (MCLA 24.292; MSA 3.560[192]).

4. ADMINISTRATIVE LAW—AIR POLLUTION—STATE AGENCIES—JURISDIC-
   TION.

   The Department of Natural Resources, the Air Pollution Control
   Commission and the Water Resources Commission may be

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 61 Am Jur 2d, Pollution Control §§ 115, 116.
   Validity of regulation of smoke and other air pollution. 78 ALR2d
   1305.
[3] 61 Am Jur 2d, Pollution Control § 155.
[4] 61 Am Jur 2d, Pollution Control § 177.
[5] 1 Am Jur 2d, Administrative Law §§ 23–25.
[6] 2 Am Jur 2d, Administrative Law §§ 610–622.

granted concurrent jurisdiction in the areas of air and water pollution.

5. ADMINISTRATIVE LAW—STATE AGENCIES—PRINCIPAL DEPARTMENTS
   —CONSTITUTIONAL LAW—STATUTES.

   Principal departments of the state government are limited by the constitution to 20; a principal department may not have less authority than one of its subordinate agencies (Const 1963, art 5, § 2, MCLA 16.104; MSA 3.29[4]).

6. ADMINISTRATIVE LAW—APPEAL AND ERROR—STANDARD OF REVIEW
   —CONSTITUTIONAL LAW.

   The standard of review in respect to decisions made by administrative agencies is whether or not the decision is supported by competent, material and substantial evidence as reflected by the whole record (Const 1963, art 6, § 28).

Appeal from Genesee, Thomas C. Yeotis, J. Submitted November 3, 1977, at Lansing. (Docket No. 30847.) Decided January 4, 1978. Leave to appeal denied, 402 Mich —.

Petition in circuit court by Berlin and Farro Liquid Incineration, Inc., against the Michigan Department of Natural Resources, the Air Pollution Control Commission, the Water Resources Commission and the Director of the Department of Natural Resources seeking review of administrative orders which terminated operation of their waste disposal facilities until plaintiff complied with certain air and water pollution standards. Judgment for defendants upholding the administrative orders. Plaintiff appeals. Affirmed.

*Honigman, Miller, Schwartz & Cohn* (by *Robert A. Fineman),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stewart H. Freeman,* Assistant Attorney General, for defendants.

Before: J. H. GILLIS, P. J., and BASHARA and
H. L. HEADING,* JJ.

J. H. GILLIS, P. J. Plaintiff, Berlin and Farro
Liquid Incineration, Inc., commenced this action in
Genesee County Circuit Court seeking judicial re-
view of administrative orders entered by the de-
fendants, the Michigan Department of Natural
Resources (hereinafter referred to as DNR), the
Air Pollution Control Commission (hereinafter re-
ferred to as APCC) and the Water Resources Com-
mission (hereinafter referred to as WRC).

The orders entered by the respective defendants
terminated the operation of plaintiff's waste incin-
eration facilities located near Swartz Creek, Michi-
gan.

Plaintiff was originally issued a permit to install
and operate a waste incinerator on April 21, 1971.
Late in 1973, defendant, APCC, commenced ad-
ministrative proceedings against plaintiff for al-
leged air pollution violations. As a result of these
proceedings, plaintiff entered into a consent agree-
ment to abate the pollution problem on April 20,
1974.[1]

The terms of the consent agreement required
plaintiff to install pollution control equipment at
its incineration facilities over the next 18 months.
The agreement also imposed other requirements
upon plaintiff which were designed to abate the
pollution problems caused by the incinerator.

In May, 1975, defendant APCC found plaintiff in
violation of the consent order and referred the
matter to the Attorney General. Shortly thereaf-
ter, defendant DNR issued an emergency cease

---

* Detroit Recorder's Court judge, sitting on the Court of Appeals by
assignment.

[1] The consent agreement was not an admission of wrongdoing by
plaintiff.

and desist order suspending plaintiff's licenses for hauling and disposing of liquid wastes, and terminating the operation of plaintiff's liquid waste incinerator.

Defendant DNR then issued an administrative complaint charging plaintiff with failure to abate particulate emissions from its waste incinerator in accordance with the consent order.

A hearing examiner appointed by defendant DNR conducted an evidentiary hearing on December 10, 1975.

The owners of plaintiff corporation admitted noncompliance with the consent order but asserted that good faith efforts had been made to acquire and install the necessary equipment. Plaintiff also stated that a supplier had delayed acquisition of the equipment which would have placed plaintiff in compliance with the state emission standard and the consent order.

Defendant APCC sets the emission standard for incinerators like plaintiff's at .1 pound of particulates per 1,000 pounds of flue gas. Defendant APCC did not actually test plaintiff's incinerator to determine if a violation existed. The violation of the emission standard was based on test data submitted by plaintiff with its original application for a permit to operate the incinerator. This data revealed that plaintiff's incinerator was grossly violating the emission standard.[2]

Water pollution was also the subject matter of the hearing. Plaintiff stores approximately 2-1/2 million gallons of liquid waste in two open lagoons. While this situation was not an immediate pollution threat, normal accumulations of rain and

___

[2] The permit application reveals that plaintiff's incinerator could be emitting as much as 2.8 pounds of particulates per 1,000 pounds of flue gas which is almost 30 times as much as the emission standard set by the APCC.

snow could eventually cause the lagoons to over-flow. This undoubtedly caused defendant DNR also to suspend plaintiff's license to haul liquid wastes since plaintiff might begin to store more than its capacity since the incinerator was shut down.

The hearing examiner made certain findings of fact in respect to both air and water pollution but regarded himself as lacking authority to make a final decision and referred his findings to defendants, APCC and WRC.

Defendant WRC issued its final order on March 25, 1976, with modifications to the findings made by the hearing examiner in respect to water pollution.

Defendant APCC adopted the findings of the hearing examiner with respect to air pollution and ordered plaintiff to permanently cease and desist from any operation of the incinerator until the consent order was complied with.

The circuit court affirmed the administrative orders entered by the respective defendants and plaintiff appeals as of right.

Plaintiff first contends that the consent order it entered into with defendant APCC is an election of remedies barring further administrative action by defendants, APCC and WRC.

Plaintiff's argument is based upon its interpretation of specific sections of the Air Pollution Act, MCLA 336.11 *et seq.;* MSA 14.58(1) *et seq.,* and the Water Resources Act, MCLA 323.1 *et seq.;* MSA 3.521 *et seq.* The Air Pollution Act authorizes air polluters and the APCC to enter into consent agreements to abate air pollution problems.[3]

---

[3] "(1) If a written complaint is filed with the commission and the commission believes, or if the commission believes that any person is violating this act or any rule promulgated by the commission by causing or permitting air pollution, the commission shall make a prompt investigation. *If after such investigation it finds that a viola-*

Plaintiff claims that agreements entered into pursuant to this section can only be reviewed by a circuit court, and directs us to MCLA 336.26; MSA 14.58(16) and MCLA 336.27; MSA 14.58(17) in support of this contention.

Plaintiff misconstrues the purpose and intent of the aforementioned sections. MCLA 336.18; MSA 14.58(8) pertains to criminal penalties for violations of the Air Pollution Act. MCLA 336.27; MSA 14.58(17) grants the APCC the general authority to bring appropriate actions in circuit courts "to enforce any and all laws, rules and regulations relating to the provisions" of the act. Neither section limits the APCC from taking further ad-

---

*tion of any rule of the commission exists, it shall endeavor to enter into a voluntary agreement with such person as provided in subsection (2).*

*"(2) In consideration of the provisions of this section or other sections of this act the commission, after due notice and opportunity for public hearing, may enter into a voluntary agreement or a performance contract with a person to abate pollution under conditions agreed upon by the commission and the person, which agreement may provide for the enforcement of its terms by specific performance.*

*"(3) If in the opinion of the commission the person violates the terms of the agreement or contract the commission can proceed to enforce the conditions of the agreement or contract by order or by the institution in a court of competent jurisdiction of an action for specific performance or such other legal or equitable relief as the commission deems appropriate.*

*"(4) Whenever a person other than a party to the agreement feels himself aggrieved by an agreement entered pursuant to subsection (2), he may file a sworn petition with the commission within 30 days of the issuance of notice of the agreement setting forth the grounds and reasons for his complaint and asking for a hearing of the matter involved. Thereupon the commission shall set a date for a hearing to be held not more than 60 days from the date the petition is filed and shall notify the petitioner thereof. At the hearing the petitioner and any other interested party may appear, present witnesses and submit evidence. A final order or determination of the commission upon the matter following the hearing shall be conclusive, unless reviewed in accordance with Act No. 306 of the Public Acts of 1969, as amended, in the circuit court for the county of Ingham or for the county in which the person resides."* MCLA 336.18; MSA 14.58(8). (Emphasis supplied.)

ministrative action on voluntary consent agreements entered into in accordance with MCLA 336.18; MSA 14.58(8).

The language of MCLA 336.18(3); MSA 14.58(8)(3) expressly authorizes the APCC to take further administrative action if there is a violation of a consent agreement.

*"If in the opinion of the commission the person violates the terms of the agreement or contract the commission can proceed to enforce the conditions of the agreement or contract by order or by the institution in a court of competent jurisdiction of an action for specific performance or such other legal or equitable relief as the commission deems appropriate."* (Emphasis supplied.)

The WRC is also expressly authorized to pursue further administrative action after a violation of an agreed-on course of action. MCLA 323.7(1); MSA 3.527(1).

Accordingly, we rule that the APCC and the WRC can institute further administrative action against a polluter after it has entered into an agreement concerning a pollution problem with such a polluter.

Plaintiff next contends that defendant DNR did not possess the authority to institute emergency administrative action on the basis of the consent agreement executed between plaintiff and defendant APCC. We disagree.

On or about September 16, 1975, defendant DNR issued an emergency order to plaintiff by which plaintiff was ordered to cease and desist from any operation of its liquid waste incinerator; to cease and desist from transporting, carrying, hauling or removing any liquid industrial waste from the premises of another to plaintiff's premises or to

any other premises; and to cease and desist from accepting any liquid industrial waste at its premises. In addition, plaintiff's license to transport or carry liquid industrial waste and the site certification of its premises were also suspended.

Section 92 of the Administrative Procedures Act authorizes such action.

"If the agency finds that the public health, safety or welfare requires emergency action and incorporates this finding in its order, summary suspension of a. license may be ordered effective on the date specified in the order or on service of a certified copy of the order on the licensee, whichever is later, and effective during the proceedings. The proceedings shall be promptly commenced and determined." MCLA 24.292; MSA 3.560(192).

The director of defendant DNR made the appropriate finding in accordance with the aforementioned statute and issued the emergency order. Plaintiff claims that defendant DNR lacked the authority to take such action.

Plaintiff argues that only defendant APCC possesses the authority to issue such orders. Plaintiff directs us to executive order #1973-2a[4] which provided for the transfer of the WRC and the APCC to defendant DNR via a "type II transfer". A "type II transfer" is defined by MCLA 16.103(b); MSA 3.29(3)(b) as follows:

"Under this act, a type II transfer means transferring of an existing department, board, commission or agency to a principal department established by this act. Any department, board, commission or agency assigned to a type II transfer under this act shall have *all its statutory authority, powers,* duties and functions, records,

[4] The executive order was executed by Governor William G. Milliken.

personnel, property, unexpended balances of appropriations, allocations or other funds, including the functions of budgeting and procurement, *transferred to that principal department.*" (Emphasis supplied.)

However, executive order 1973-2a contains provisions that seemingly divest the defendant DNR of authority to make an emergency order.

"The Water Resources Commission shall continue to exercise independent authority with respect to quasi-judicial functions in the rule-making, enforcement, and issuance of orders in the water pollution control functions. In all other areas it shall serve in an advisory capacity to the Natural Resources Commission and staff.

\* \* \*

"The Air Pollution Control Commission shall continue to exercise independent authority with respect to quasi-judicial functions in the rule-making, enforcement, and issuance of orders in the air pollution control function. In all other areas it shall serve in an advisory capacity to the Natural Resources Commission and staff."

Such a hybrid "type II transfer" can be construed to grant either the DNR and the individual commissions the authority to act in areas of air and water pollution or restrict action in such areas to the individual commissions alone.

This Court construes the order to grant concurrent jurisdiction to defendant DNR and the individual commissions. The alternate interpretation of the order proposed by the plaintiff would present serious constitutional questions. MCLA 16.104; MSA 3.29(4) mandates that a principal department not have less authority than a subordinate agency:

"Except as otherwise provided by this act, or the

state constitution, all executive and administrative powers, duties, and functions, excepting those of the legislature and the judiciary, previously vested by law in the several state departments, commissions, boards, officers, bureaus, divisions, or other agencies *are vested* in the following principal departments * * * ." (Emphasis supplied.)

If the WRC and APCC have greater authority than their superior agency, the DNR, a question arises as to whether they are de facto principal departments, contrary to the constitutionally imposed limit of 20. Const 1963, art 5, § 2, MCLA 16.104; MSA 3.29(4).

We do not believe that the Governor intended to violate the constitution of this state by increasing the number of principal departments beyond the constitutionally imposed limit of 20. Accordingly, we rule that defendant DNR possessed the authority to issue the emergency cease and desist order which resulted in the cessation of operation of plaintiff's incineration facilities.

Plaintiff finally claims that the administrative decisions made by the respective defendants are invalid in that they are not supported by sufficient evidence.

The standard of review in respect to decisions made by administrative agencies is whether or not the decision is supported by competent, material and substantial evidence as reflected by the whole record. Const 1963, art 6, § 28.

Defendant APCC adopted the findings of the DNR hearing examiner and in addition found that compliance with the consent order was necessary to prevent air pollution from plaintiff's incinerator. The hearing examiner also found that plaintiff had violated other provisions of the consent agree-

ment besides failing to install the appropriate pollution control devices.

One of plaintiff's owners admitted noncompliance with the provisions of the consent order.[5] Plaintiff attempts to excuse this noncompliance by alleging that it made good faith efforts to order and install the pollution control devices.

However, even if this good faith effort could be found to justify and excuse plaintiff's noncompliance in respect to the pollution control equipment, it would not excuse plaintiff's failure to adhere to the remaining conditions of the consent order.

Based upon this record, we find that the decisions entered by the respective defendants are supported by competent, material and substantial evidence. The other issues raised on appeal do not merit discussion by this Court.

Accordingly, the trial court's order is affirmed. No costs, a public question being involved.

---

[5] An agent of plaintiff corporation admitted noncompliance with the consent order at the administrative hearing.